EDWARDS, Judge.
Plaintiff, Floyd Simpkins, filed suit against two of his former attorneys, John R. Rarick and Jesse L. Means, Jr., alleging that he lost a serious cause of action against his union because the defendants negligently failed to advise him of his cause of action, failed to assert the cause of action on his behalf and allowed the cause of action to prescribe. The trial *161 court maintained the defendants’ peremptory exceptions raising the objection of prescription and dismissed the plaintiffs petition. The plaintiff appealed. - After a thorough review of the record, we affirm the judgment of the lower court.
Background Facts and Procedural History
On or about August 20, 1982, Simpkins, while employed at a papermill owned by Crown Zellerbach, was involved in an on-the-job altercation with Isaac Gordon, a co-employee. ' By way of letter dated August 23, 1982, Simpkins was discharged from his employment for "... disorderly conduct when you assaulted a fellow employee with a dangerous instrument with the intent to cause bodily injury.” Gordon was also terminated following the altercation. Simp-kins then filed a grievance pursuant to a collective bargaining agreement between the United Paperworkers Union (of which Simpkins was a member) and Crown Zeller-bach, and the dispute was submitted to arbitration. The arbitrator upheld the discharges, concluding that the termination of Simpkins and Gordon was supported by “just cause under the Agreement.” Subsequently, co-employée Gordon reapplied for employment with Crown Zellerbach and was reinstated with back pay and benefits. Upon learning of Gordon’s reinstatement, Simpkins contacted union members and requested that the union negotiate with the company on his behalf and take other appropriate measures to secure his reinstatement. Simpkins testified that he had been given verbal assurances by union member Robert Jarreau that the union would file a discrimination grievance on Simpkins’ behalf if and when Gordon was reinstated by the company. However, on November 14, 1983, the union informed Simpkins by phone that it would not represent him any further in the matter.
Prior to that phone call, on or about July 7, 1983, Simpkins hired an attorney, defendant John Rarick, to assist him in recovering his former job with Crown Zellerbach. Rarick filed an unsuccessful claim with the EEOC on Simpkins’ behalf in late 1983. In denying Simpkins’ claim, the EEOC mailed to Simpkins a Notice of Right to Sue, dated February 21, 1984, informing him that he had ninety (90) days from the date of the notice in which to proceed against the company. By way of letter dated April 18, 1984, Rarick formally informed Simpkins that he was withdrawing from his representation of Simpkins in the matter, and in this letter, he reminded Simpkins of the ninety (90) day limitation as specified in the EEOC right to sue letter.
In April or May, 1984, Simpkins retained the services of another attorney, defendant Jesse • Means, in a continued attempt to recover his job. Means filed a civil rights action on behalf of Simpkins, in federal court, charging the company with racial discrimination. This action was settled out of court; according to Simpkins, he agreed to accept $7,500 in settlement after Judge Polozola opined that Simpkins’ case was unwinnable and suggested that Simpkins would be subject to sanctions if the case was pursued.
In August, 1987, Simpkins retained his present attorney. On October 17, 1988, Simpkins filed the instant malpractice action against Rarick and Means claiming that he had a viable cause of action against his union (for breach of its duty of fair representation) which the two defendants negligently allowed to prescribe. The issue before us is whether the trial court erred in concluding that this action had prescribed.
Prescription
Apparently, it is uncontested that the one year prescriptive period applicable to delic-tual actions pursuant to Civil Code article 3492 applies in this case, and that the one year begins to run from the date injury or damage is sustained. LSA-C.C. art. 3492. Simpkins’ alleged damage is the loss of a viable cause of action; therefore, the date on which that action prescribed is the date on which prescription began to run on his malpractice action, unless the running of prescription was either interrupted or suspended. See Olivier v. Poirier, 563 So.2d 1227 (La.App. 1st Cir.), cert. denied, 568 So.2d 1054 (1990).
The record established that on November 14, 1983, Simpkins received notice that the union would no longer represent him; *162 therefore, prescription on an action against the union for any alleged breach of fair representation began to run on that date. Apparently, it is also uncontested that the six month prescriptive period of § 10(b) of the National Labor Relations Act applies to an action for unfair representation;[1] therefore, that action prescribed on May 14, 1984. Simpkins’ malpractice action, filed more than one year after that date, is prescribed on its face. Therefore, in order to defeat an exception raising the objection of prescription, it was incumbent on Simpkins to prove that prescription was interrupted or suspended. See Additon v. Chevron U.S.A., Inc., 526 So.2d 465, 467 (La.App. 1st. Cir.), cert. denied, 532 So.2d 177 (1988).
Contra Non Valentem
Simpkins invokes the jurisprudential doctrine of contra non valentem and contends that prescription was suspended because he was unaware that he had a cause of action against the union and therefore, he was also unaware of a potential malpractice claim against the defendants until he was so advised by his present counsel in October, 1987. Contra non va-lentem will aid Simpkins only if his ignorance of the cause of action was “excusable” since the doctrine applies only where the cause of action is not known or reasonably knowable by the plaintiff, and a plaintiff is deemed to know what he could have learned through reasonable diligence. See Corsey v. State Dept. of Corrections, 375 So.2d 1319, 1322 (La.1979). The trial court found that, in 1983, Simpkins knew the facts necessary to state a cause of action against the union and Simpkins knew thereafter that the defendants never filed a claim on his behalf against the union. Therefore, the trial court concluded that long before one year prior to the filing of this action Simpkins knew or should have known the facts which would enable him to state a cause of action for legal malpractice against the defendants. The trial court specifically stated that Simpkins’ “purported and professed ignorance was not excusable and did not suspend the running of prescription.”
We have thoroughly reviewed the record and find that the trial court’s findings are amply supported by the evidence. Simp-kins testified that on November 14, 1983, when he received the telephone call notifying him that the union was no longer going to represent him, he knew at that point that the union had “wronged” him. The record reveals that Simpkins had prior experience in several other lawsuits filed on his behalf in various other instances where he felt he had been “wronged.” Simpkins’ testimony regarding these prior lawsuits revealed his knowledge about the availability of legal redress for “wrongful” action. Therefore, when the union refused to represent him in November, 1983, Simpkins either knew, or he should have known, that there was a possible cause of action against the union.
Furthermore, the evidence reflects that Simpkins knew or should have known that that cause of action would prescribe if not timely pursued. Simpkins’ testimony revealed that he was well versed on the concept of prescription. He stated that “most cases I knew of prescribed in one year in Louisiana law.” Although he denied having any knowledge about "labor matters,” he admitted that he knew that his action against the company was subject to a ninety-day prescriptive period, pursuant to the EEOC right to sue letter, and his understanding of the letter was that if no action was taken within ninety days "... the case prescribed. It ended. It was over.” The cause of action against the union, governed by federal labor laws, actually prescribed in six months. It is understandable that Simpkins did not know that this specialized area of law was subject to a shorter prescriptive period, rather than the general one year period with which Simpkins was familiar; therefore, we do not impart this knowledge upon him. However, Simpkins’ actual knowledge about prescription in general was sufficient to put him on notice that his cause of action was subject to time restraints. Simpkins had actual knowledge that the cause of action against the union was not pursued by either- Rarick or *163 Means, and he should have known, at least after the passage of one year after the union’s telephone call, that that action had prescribed. At that moment in time, Simp-kins had, at the very least, constructive knowledge of all of the facts necessary to allege a cause of action in legal malpractice against the defendants. He did not do so until almost four years later, and as a result, that action prescribed.
For the foregoing reasons, we affirm the judgment of the trial court and assess costs of this appeal to the plaintiff.
AFFIRMED.

. See Richardson v. United Steelworkers of America, 864 F.2d 1162 (5th Cir.1989).